UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

George Robert Studnicka,                    Civil No. 05-723 (JRT/FLN)

             Plaintiff,

       v.                                   **REPORT AND RECOMMENDATION**

A. Daniel Pinheiro, et al. E.N.T. at Mayo;
Yolanda I. Garces, et al. Radiation Oncology;
& Mayo Clinic Facility, et al. Rochester, MN.

             Defendants.

_____

Pro Se Plaintiff.
Paul B. Klass, William Stoeri, & Ilyse S. Goldsmith, for Defendants.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on the

Plaintiff's complaint entitled "Complaint For Violation of Civil Rights Under 42 U.S.C. § 1983."

[#1].  Defendants now move for Summary Judgment [#24] and for a Motion to Dismiss [#33].  The

matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636

and Local Rule 72.1.  For the reasons which follow the Court recommends that Defendants' Motion

for Summary Judgment [#24] and Defendant's Motion to Dismiss [#33] be granted.

## I.  BACKGROUND

Plaintiff George Studnicka was an inmate at the Federal Medical Center (hereinafter "FMC")

in Rochester, Minnesota during all relevant time periods referred to in his complaint.  (Compl. at

3.)  Plaintiff is currently an inmate at a federal facility in Estill, South Carolina.  (Docket No. 50.)

Defendant Mayo Clinic Facility is a medical facility located in Rochester, Minnesota.  (Compl. at

3.)  Defendant A. Daniel Pinheiro is a medical doctor with the E.N.T. Department at the Mayo

-1-

Clinic.  (Compl. at 3.)  Defendant Yolanda I. Garces is a medical doctor with the Radiation Oncology Department at the Mayo Clinic.  (Compl. at 3.)  Defendant Mayo Clinic contracts out services to FMC.  (Def's Mem. at 2.)  Plaintiff filed a civil rights complaint against Defendants based on events that occurred while Plaintiff was an inmate at FMC.

On January 19, 2001, during a routine sick call examination, it was discovered that Plaintiff had a small mass on the right side of his neck.  (Compl. at 6.)  A CAT scan was performed on February 7, 2001. (Compl. at 6.)  The CAT scan indicated an abnormal area and Plaintiff was referred to Mayo Clinic E.N.T.  Plaintiff was thereafter diagnosed with cancer of the lymph nodes.  (Compl. at 6.) Plaintiff alleges that he verbally refused any type of intrusive operation to correct the cancer. (Pl.'s Mem in Opp. at 1.) Plaintiff alleges that he requested to see an oncologist at the Mayo Clinic in order to discuss alternative treatment options, including treatment with "Monocloncal antibodies", such as the FDA approved "Rituxan" "for treatment of Lymph Node cancer without any intrusions."  (Compl. at 36.)

On April 11, 2001, Plaintiff alleges that Dr. Pinheiro wrongfully operated on Plaintiff's neck, after weeks of verbal refusal by Plaintiff before the operation took place.  (Compl. at 3.)  Plaintiff alleges that Dr. Pinheiro accidentally cut his vocal cord and his nerves and that Dr. Pinhiero wrongfully removed muscle mass and three lymph nodes from Plaintiff that were not cancerous.  (Compl. at 3.)  Plaintiff further alleges that in May 2001, Dr. Garces and the Radiation Oncology Department administered radiation therapy treatments that Plaintiff repeatedly refused.  (Compl. at 3.)  Plaintiff alleges that he was over-exposed to radiation, and that this over-exposure resulted in many side-effects.  (Compl. at 3.)  Plaintiff alleges that the excess exposure of radiation caused Plaintiff to loose all of his teeth and his saliva glands, and severely damaged his neck and shoulder

muscles, taste buds and other glands and tissues.  (Compl. at 3.)  Plaintiff further alleges that his immune system was "basically destroyed" as a result of receiving radiation and that Plaintiff suffers from "constant thrust disease of mouth and throat [and] constant sinus and dry mouth infections." (Compl. at 3.)  Plaintiff states in his complaint that Defendants refused to conduct any corrective procedures, including providing Plaintiff with dental implants.  (Compl. at 3.)  Plaintiff alleges that Defendants allowed an experimental operation in their facility without Plaintiff's consent.  (Compl. at 3.)

Plaintiff lodged several complaints within the Bureau of Prisons (hereinafter "BOP") regarding this procedure and its effects, including a request for administrative remedy lodged with FMC, a regional administrative remedy appeal, and a central office administrative remedy appeal. (Compl. at 2.)  In response to Plaintiff's request for administrative remedy, W. I. Leblanc, Jr., the warden of FMC, stated that Dr. Pinheiro documented that he had a lengthy discussion with Plaintiff on March 21, 2001, fully discussing the surgical procedure and the radiation therapy, including the potential complications involved.  (Compl. at 6.)  Mr. LeBlanc further noted that the surgery was a success because Plaintiff has remained cancer free with no recurrence since the surgery.  (Compl. at 6.)  Mr. LeBlanc informed Plaintiff that his surgery was not experimental "but was extensive and necessary to ensure a curative result."  (Compl. at 6.)  Mr. LeBlanc stated that Plaintiff had the option of signing a refusal form during his treatment and he did not.  (Compl. at 6.)  Mr. LeBlanc informed Plaintiff that the BOP would not authorize dental implants for Plaintiff because such implants are not approved by BOP policy.  (Compl. at 6.)

After Plaintiff's requests for administrative remedies were denied, Plaintiff filed the present action, claiming that Dr. Pinheiro wrongfully operated on Plaintiff without Plaintiff's consent, that

Dr. Garces wrongfully started radiation therapy on Plaintiff that Plaintiff did not consent to, and that the Mayo Clinic is liable because it allowed an experimental operation in its facility without Plaintiff's consent. (Compl. at 3.)

In his request for relief, Plaintiff also alleges a number of claims against FMC and FMC staff, none of whom are parties to the present lawsuit. Plaintiff's first request for relief alleges that FMC engaged in retaliation against Plaintiff for filing requests for administrative relief and the current lawsuit. (Compl. at 4.) In his first request for relief Plaintiff also alleges that FMC has engaged in "deliberate indifference" by refusing to provide Plaintiff with medical care or the corrective procedures he needs, and further alleges that FMC has vindictively medically cleared Plaintiff to force Plaintiff's transfer to a non-medical federal prison facility. (Compl at 4.) In his second request for relief, Plaintiff appears to be alleging a claim of insufficient medication against FMC. (Compl at 4.)

Plaintiff's first request for relief asks the Court issue an order against FMC ordering FMC to cease their retaliation against Plaintiff due to his filing of the various administrative complaints regarding this incident. (Compl. at 4.) Plaintiff's second request for relief requests that the Court allow this action to proceed to a jury trial for damages, so that Plaintiff can receive procedures to correct the medical problems he is facing because of the allegedly unauthorized surgery. (Compl. at 4.) Plaintiff's third request for relief requests the Court to issue an order for discovery to each Defendant to provide full and complete copies of all medical files that pertain to Plaintiff, list all employees and identification numbers of all the employees who worked in each of their departments for the last four years, provide copies of all x-rays taken of Plaintiff, all laboratory results, and provide any other records that exist in any other department regarding the treatment of Plaintiff for

-4-

any reason. Plaintiff's fourth request for relief asks the Court to issue an order to FMC to provide all Plaintiff's medical records and files for the medical care that Plaintiff received, and Plaintiff requests that the personal notes of the physicians involved be included and that the person who schedules operations for the Mayo Clinic be identified. (Compl. at 4.) Plaintiff's fourth request for relief also asks the Court to "complete discovery demand upon anyone even mentioned within the incorporated and moving papers, correct spelling of full names of all persons aforementioned and their official positions, including persons at the Regional Office and Washington, D.C. Office [and] [c]opies of their files and records." (Compl. at 4.)

Defendants' now move for summary judgment to dismiss Plaintiff's complaint in its entirety. Defendants' argue that Defendants are not proper parties and that Plaintiff's requested relief is not relief that Defendants can provide. Defendants subsequently filed a motion to dismiss, stating that Plaintiff has failed to comply with the requirement of bringing a medical malpractice action in Minnesota and therefore Plaintiff's complaint should be dismissed with prejudice. For the reasons discussed below, the Court recommends that Defendants' Motion for Summary Judgment concerning Plaintiff's claims under 42 U.S.C. § 1983 be granted and that Defendants' Motion to Dismiss Plaintiff's medical malpractice claim be granted.

## II.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING PLAINTIFFS CLAIMS UNDER 42 U.S.C. § 1983

### A.   Standard of Review

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-27 (1986). Therefore, summary judgment is appropriate when the moving party establishes that there is no genuine issue as to any material fact and the

moving party is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S. at 322-23.  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case; while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, a court should construe all evidence in favor of the non-moving party.  <u>Id.</u> at 255.  Thus, summary judgment is appropriate when the court has viewed the facts and the inferences drawn from those facts, in a light most favorable to the non-moving party, and found no triable issue.  <u>See</u> <u>Southwall Technologies, Inc. v. Cardinal IG Co.</u>, 54 F.3d 1570, 1575 (Fed. Cir. 1995).

### B.    Plaintiff Has Not Sufficiently Alleged A Constitutional Violation

Plaintiff's complaint is entitled "Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983."  However, nowhere in his complaint does Plaintiff allege that his constitutional rights were violated by the named Defendants.  In their summary judgment motion, Defendants argue that they are not proper Defendants to this action because they are not state actors, and that the Defendants in a 42 U.S.C. §1983 action must be state actors in order for Plaintiff to state a valid claim under §1983.  While that may be true, courts are required to construe *pro se* pleadings liberally, and *pro se* pleadings are held to a less stringent standard when challenged by motions to dismiss.  <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Horsey v. Asher</u>, 741 F.2d 209, 211 n.3 (8th Cir.1984).  In the present case the Court would be inclined to interpret Plaintiff's complaint as a <u>Bivens</u> action,[1] if

---

[1]In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>. 403 U.S. 388, 397 (1971), the Supreme Court held that "petitioner [was] entitled to recover money damages for any injuries he . . . suffered as a result of the agents' violation of the [Fourth] Amendment."  This

Plaintiff would have alleged constitutional violations in his complaint.

However, in his complaint Plaintiff has failed to allege that any of his constitutional rights were violated, and therefore Plaintiff has failed to sufficiently allege a cause of action that the Court could construe as a <u>Bivens</u> action.   In his complaint Plaintiff alleges that Defendant Pinhiero conducted an unauthorized and experimental operation on Plaintiff, without securing Plaintiff's written or oral consent. (Compl. at 3.)  Plaintiff further alleges that Defendant Garces administered radiation therapy on Plaintiff that Plaintiff did not consent to and that Plaintiff "clearly refused." (Compl. at 3.)  Nowhere within Plaintiff's complaint does he allege that any of Defendants' actions violated his constitutional rights.   In his memorandum in opposition to Defendants' motion for summary judgment, Plaintiff reiterates that this court has jurisdiction over this case pursuant to 42 U.S.C. § 1983, and that Defendants are the proper parties because they were under contract as health care providers for federal prisoners of FMC.  (Pl.'s Mem. in Opp. at 1-2.)  Plaintiff states that

---

case formed the seminal case for what is now known as a <u>Bivens</u> action.  As the Court later described, "*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." <u>Carlson v. Green</u>, 464 U.S. 14, 18 (1980).  The <u>Carlson</u> decision stands for the proposition that the violation of a prisoner's Eighth Amendment rights may also form the basis of a <u>Bivens</u> action.  <u>Id</u>. at 19.

The Eighth Circuit has stated that "[t]his court has referred to a *Bivens* action as 'the federal law analogous to § 1983.'" <u>Sanchez v. United States</u>, 49 F.3d 1329, 1330 (8th Cir.1995) (quoting <u>Vennes v. An Unknown Number of Unidentified Agents</u>, 26 F.3d 1448, 1452 (8th Cir.1994), <u>cert</u>. <u>denied</u>, 513 U.S. 1076 (1995)).  The Eighth Circuit has stated that "[a]n action under *Bivens* is almost identical to an action under section 1983, except that the former is maintained against federal officials while the latter is against state officials." <u>Christian v. Crawford</u>, 907 F.2d 808, 810 (8th Cir.1990).  As further noted by the Court, "'[t]he effect of *Bivens* was, in essence, to create a remedy against federal officers, acting under color of federal law, that was analogous, to the § 1983 action against state officials.'" <u>Bellecourt v. United States</u>, 784 F.Supp 623, 629 (D.Minn.1992) (quoting <u>Dean v. Gladney</u>, 621 F.2d 1331, 1336 (5th Cir.1980)).

"Defendants clearly violated Plaintiff's rights when they acted inconjunction [sic] by performing an experimental wrongful intrusive operation and other procedures over Plaintiff's objections, made weeks before Plaintiff's operation without any written or oral consent" and that as a result of these procedures Plaintiff has suffered numerous physical problems.  (Pl.'s Mem. in Opp. at 2.)  Plaintiff further states that "Plaintiff's constitutional rights were clearly violated by Defendants' actions and inactions, by performing an unauthorized operation upon Plaintiff, without any written or verbal consent, over objections, acting with undue malice, total negligence, malpractice of profession position, as health care providers to a federal prisoner of the United States of America."  (Pl.'s Mem. in Opp. at 2.)

In his summary judgment memorandum Plaintiff states that Defendants have engaged in activities that violated his constitutional rights.  However, Plaintiff does not direct the Court to the particular constitutional provisions that Plaintiff alleges were violated by reason of Defendants' actions.  The Court is required to construe *pro se* pleadings liberally; however, the Court cannot insert constitutional provisions into the complaint where no constitutional provisions have been identified.  Therefore, Plaintiff's complaint against named Defendants based on 42 U.S.C. § 1983 must be dismissed.

To the extent that Plaintiff attempts to allege Eighth Amendment violations against FMC by alleging "deliberate indifference[2]" on the part of FMC for its refusal to provide appropriate medical

---

[2] "Prison officials or their agents violate the eighth amendment if they commit 'acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs.'" Jolly v. Knudson, 205 F.3d 1094, 1096 (8th Cir.2000) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  Plaintiff has sufficiently invoked this standard when he refers to the deliberate indifference of FMC; however, Plaintiff's claims of deliberate indifference are directed solely at FMC, and he does not make any claims that the named Defendants have engaged in "deliberate indifference" to any of his medical needs.  Therefore,

care, for failure to administer appropriate treatment, for insufficient medication, for vindictive medical clearance and to the extent that Plaintiff alleges that FMC has deliberately disregarded his medical needs, those claims are not made against the named Defendants, and hence they must be dismissed.  FMC has never been named a party to this action, nor has FMC ever been served with a copy of the summons and complaint.  Hence, FMC is not a party to this action and any claims made against FMC and its employees are not properly before the Court at this time.  The Court does not express any opinion as to the validity of any potential claims that Plaintiff may have against FMC.  The Court merely states that it does not have jurisdiction over claims that Plaintiff alleges against persons and entities who are not parties to the present action.

### III.    DEFENDANTS MOTION TO DISMISS

#### A.    Standard of Review

Defendants filed a motion to dismiss Plaintiff's claims of medical malpractice.  Defendants contend they are entitled to dismissal of the medical malpractice claims because Plaintiff did not comply with the requirements of Minnesota Statute section 145.682.

Minnesota Statute section 145.682 states that "[i]n an action alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case" the plaintiff must serve upon defendant two affidavits.  Minn.Stat. § 145.682(2).  The Plaintiff is required to serve the first affidavit (hereinafter "expert review affidavit") on defendant with the summons and complaint.  Id.  The first affidavit must be signed by a *pro se* plaintiff and it must state

---

the Court does not construe Plaintiff's claim against Defendants to be an Eighth Amendment claim, as it construes Plaintiff's attempted claims against non-party FMC to be Eighth Amendment claims.

that

> (a) the facts of the case have been reviewed by the [*pro se* plaintiff] with an expert
> whose qualifications provide a reasonable expectation that the expert's opinions
> could be admissible at trial and that, in the opinion of this expert, one or more
> defendants deviated from the applicable standard of care and by that action caused
> injury to the plaintiff; or (b) the expert review required by paragraph (a) could not
> reasonably be obtained before the action was commenced because of the applicable
> statute of limitations.  If an affidavit is executed pursuant to this paragraph, the
> affidavit in paragraph (a) must be served on defendant or defendant's counsel within
> 90 days after service of the summons and complaint.

Minn.Stat. § 145.682(3); see also Minn.Stat. § 145.682(5).  Failure to serve the expert review affidavit with the summons and complaint "within 60 days after demand for the affidavit results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case."  Minn.Stat. § 145.682(6).

The second affidavit (hereinafter "expert identification affidavit") must be served upon defendant within 180 days after commencement of the suit.  Minn.Stat. § 145.682(2).  The second affidavit

> must be signed by each expert listed in the affidavit and by the [*pro se* plaintiff] and
> state the identity of each person whom plaintiff expects to call as an expert witness
> at trial to testify with respect to the issues of malpractice or causation, the substance
> of the facts and opinions to which the expert is expected to testify, and a summary
> of the grounds for each opinion.

Minn.Stat. § 145.682(2); see also Minn.Stat. § 145.682(5). Failure to serve the expert identification affidavit "results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case."  Minn.Stat. § 145.682(6).

Plaintiff can avoid dismissal of his claims for noncompliance with the statute in two ways. "First, the court may extend the time for serving the affidavits, even after the time limits have expired, upon a showing of excusable neglect."  Bellecourt v. United States, 784 F.Supp. 623, 636

-10-

(D.Minn.1992) (citing <u>Stern v. Dill</u>, 442 N.W.2d 322, 324 (Minn.1989)).  "Excusable neglect is found when there is a reasonable defense on the merits, a reasonable excuse for the failure to answer, the party acted with due diligence after notice of the entry of judgment, and no substantial prejudice results to other parties."  <u>Parker v. O'Phelan</u>, 414 N.W.2d 534, 537 (Minn.Ct.App.1987), <u>aff'd</u> 428 N.W.2d 361 (Minn.1988).

The second way a plaintiff can avoid dismissal of his claims for noncompliance with the statute is when expert testimony is not needed to establish liability.  <u>Bellecourt</u>, 784 F.2d at 636.  "Expert testimony is not necessary where the facts to be determined are within the common knowledge of the jury and 'where the results of surgical or medical treatment, viewed in the light of all the circumstances, provide a sufficient evidentiary basis to support an inference of negligence.'"  <u>Bauer v. Friedland</u>, 394 N.W.2d 549, 553 (Minn.Ct.App.1986) (quoting <u>Hestbeck v. Hennepin County</u>, 212 N.W.2d 361, 364 (Minn.1973)).

**B.    Plaintiff's Minnesota State Law Medical Malpractice Claims Are Dismissed Because Plaintiff Failed to Comply With Minnesota Statute Section 145.682**

Plaintiff's complaint alleges numerous causes of actions against Defendants and several other causes of action against persons who are not currently parties to this action.  In the present case, the substance of Plaintiff's medical malpractice claims against Defendants are that Defendant Pinhiero wrongfully operated on Plaintiff using an experimental operation and that during that operation Defendant Pinhiero accidentally cut Plaintiff's vocal cord and nerves and wrongfully removed healthy muscle mass and lymph nodes from Plaintiff.  Plaintiff further alleges that he suffered numerous painful side effects as a result of Defendant Pinhiero's actions.  Plaintiff also alleges that Defendant Garces over-exposed Plaintiff to radiation, causing him numerous painful side effects.  Plaintiff further alleges that Defendant Mayo Clinic allowed these unauthorized procedures to take

place on its premises, and that the Mayo Clinic is liable for these actions.

These claims against Defendants constitute "an action alleging malpractice, error, mistake or failure to cure . . . based on contract or tort, against a health care provider which includes a cause of action as to which expert testimony is necessary." Minn. Stat. § 145.682(2). In order to prove his claim Plaintiff would need an expert to prove that Dr. Pinhiero engaged in an experimental operation and that he was negligent when he cut Plaintiff's vocal cords and nerves and wrongfully removed healthy tissue. Plaintiff also needs expert testimony to prove that Dr. Garces over-exposed him to radiation.

Therefore, Plaintiff must comply with Minnesota Statute Section 145.682 before his medical malpractice claims can go forward. Plaintiff filed his complaint on April 11, 2005. (Compl. at 1.) Plaintiff served his complaint on Defendants on May 6, 2005. It is undisputed that Plaintiff did not file either of the expert affidavits required by Minnesota Statute Section 145.682. On August 30, 2005, Defendants made a demand for Plaintiff to produce the expert review affidavit as required by Minn. Stat. § 145.682 (6)(a). (Affidavit of Ilyse Goldsmith (hereinafter "Goldsmith Aff."), Ex. A.). More than sixty days have elapsed since Defendants made this request and Plaintiff has not filed the required affidavit. Therefore, Plaintiff's medical malpractice claims must be dismissed with prejudice unless Plaintiff can qualify for one of the two exceptions to the expert affidavit statute.

The first way for a plaintiff to avoid dismissal of his medical malpractice claims, after a failure to comply with Minnesota Statute Section 145.682, is if the plaintiff can make a showing of excusable neglect. In the present case, Plaintiff attempted to make an amendment to his complaint by letter dated April 30, 2005. (Docket No. 2.) In that letter Plaintiff asked the Clerk of Court to include in the attachments to his complaint his formal request to BOP staff, made on October 24,

2004, to permit a private physician come to FMC at Plaintiff's expense to examine Plaintiff. (Docket No. 2.) Plaintiff subsequently filed a motion for an order compelling Defendants to comply with discovery requests in this case on September 12, 2005.  (Docket No. 22.)  In that motion, Plaintiff alleges that Defendants have not provided him with full copies of his medical records. (Docket No. 22.)  In their motion for summary judgment, Defendants assert that they have provided Plaintiff with a full copy of the medical records that concern Plaintiff that were within their possession at the time of Plaintiff's request.  (Def.'s Mem in Support of Summary Judgment at 6.) While Plaintiff also notes in his motion that he will be able to provide an expert affidavit once Defendants have answered his interrogatories, Plaintiff is required by Minnesota statute to serve the required affidavit at the time of the service of the summons and complaint, or within 90 days if the affidavit could not reasonably be obtained before the action was commenced due to the statute of limitations.  However, in neither case would Plaintiff be afforded the benefit of interrogatory answers previous to the required filing.  Therefore, whether or not Defendants have answered Plaintiff's interrogatories has no bearing on Plaintiff's failure to file the required affidavit.

Plaintiff also filed a motion for continuance on November 29, 2005, wherein he stated "Plaintiff may need to obtain a medical expert witness, notwithstanding the fact that prison authorities have refused to allow any outside doctors into this facility to examine Plaintiff." (Pl.'s Mot. for Continuance at 1.)  Prison policy does not permit private physicians to examine prisoners; however, Plaintiff was permitted to send copies of his medical record to an outside doctor.  (See Compl. at 15.)  Furthermore, Plaintiff's request to BOP staff to have a private physician examine him was made one year before Plaintiff filed the instant suit in this matter.  Plaintiff did not make any further attempts to send his medical records to a physician or otherwise attempt to comply with

Minnesota statute 145.682.  Therefore, in the present case, it appears that plaintiff cannot make a showing of excusable neglect.  Plaintiff has not come forward with any excuse as to why he failed to answer, and Plaintiff did not act with due diligence in procuring an expert witness upon notification by Defendants that the statute requires such an affidavit.  Expert testimony is required in order to establish the liability of Defendants; therefore, Plaintiff's failure to file the expert review affidavit within the applicable time frame results in a dismissal of Plaintiff's medical malpractice claims, as required by Minnesota Statute Section 145.682(6)(a).

In addition, Plaintiff failed to file the expert identification affidavit within 180 days after Plaintiff commenced the present lawsuit.  Plaintiff was required to serve his expert identification affidavit no later than October 8, 2005, and Plaintiff failed to do so.  As Defendants have made the required motion, failure to serve the expert identification affidavit also results in the "mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case."  Minn. Stat. § 145.682 (6)(b).  Therefore, Plaintiff's medical malpractice claims are dismissed because he failed to file both of the expert affidavits required by Minnesota Statute Section 145.682.

## IV.   RECOMMENDATION

Based on all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED [#24]**;  that Defendants' Motion to Dismiss Plaintiff's medical malpractice claims be **GRANTED** [#33]; that Plaintiff's motion to deny Defendants' motion for summary judgment be **DENIED** [#32]; and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE.**

-14-

DATED: January 30, 2006                    s/ *Franklin L. Noel*
                                           FRANKLIN L. NOEL
                                           United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 16, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.