## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| GEORGE R. STUDNICKA, | Civil No. 05-723 (JRT/FLN) |
| Plaintiff, | |
| v. | |
| A. DANIEL PINHEIRO, YOLANDA I. GARCES, and MAYO CLINIC FACILITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

George R. Studnicka, #12658-004, Federal Correctional Institution, P.O. Box 1000, Butner, NC 27509, plaintiff *pro se*.

William R Stoeri, Ilyse S. Goldsmith, Paul B. Klaas and Bartholomew B. Torvik, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402-1498, for defendants.

Plaintiff George R. Studnicka, a federal prisoner, has filed this lawsuit against Mayo Clinic and two of its physicians, A. Daniel Pinheiro and Yolanda I. Garces, claiming violation of his civil rights under 42 U.S.C. § 1983 and medical malpractice. Studnicka alleges, *inter alia*, that Pinheiro performed an invasive surgical operation on him without his consent and that Garces started radiation therapy on him without his consent. Studnicka has also filed several motions, including motions to produce, Motion for Order Compelling Defendants to Comply with Discovery, Motion for a Temporary Restraining Order, Motion for Continuance, and Motion to Appoint Counsel.

Defendants moved for summary judgment to dismiss Studnicka's complaint in its entirety. Defendants argue that they are not proper parties under 42 U.S.C. § 1983 and that they cannot provide Studnicka's requested relief. Defendants subsequently filed a motion to dismiss, arguing that Studnicka has failed to comply with the requirement of bringing a medical malpractice action in Minnesota and therefore Studnicka's complaint should be dismissed with prejudice.

In the Report and Recommendation dated January 30, 2006, the Magistrate Judge recommended that the Court grant the motion for summary judgment and the motion to dismiss filed by defendants. On that same day, the Magistrate Judge denied all of Studnicka's motions. On February 27, 2006, the Court received Studnicka's Objections to the Report and Recommendation, and his appeal of the Magistrate Judge's Order. In an Order dated March 16, 2006, this Court concluded that Studnicka's objections and appeal should be treated as timely.[1]

## BACKGROUND

Plaintiff George Studnicka was an inmate at the Federal Medical Center (hereinafter "FMC") in Rochester, Minnesota during all relevant time periods referred to in his complaint. Defendant Mayo Clinic Facility is a medical facility located in Rochester, Minnesota, which provides medical services to FMC. Defendant A. Daniel

---

[1] Upon receiving Studnicka's objection and appeal and concluding that it should be treated as timely, the Court by its Order dated March 16, 2006 [Docket No. 68] vacated its Order dated February 17, 2006 [Docket No. 59]. Without the benefit of knowing that this Court was vacating its Order, Studnicka filed a notice of appeal on March 16, 2006 [Docket No. 66]. Studnicka may withdraw the notice of appeal to avoid paying the filing fee.

Pinheiro is a medical doctor with the Ear, Nose, and Throat Department at the Mayo Clinic.  Defendant Yolanda I. Garces is a medical doctor with the Radiation Oncology Department at the Mayo Clinic.

Studnicka alleges that in November 2000 he complained to a doctor at FMC about hardening of his upper right lymph gland causing neck and throat pains.  Because the symptoms worsened, a CAT scan was performed on February 7, 2001.  The CAT scan indicated an abnormal area and Studnicka was referred to Mayo Clinic.  Studnicka was thereafter diagnosed with cancer of the lymph nodes.  Studnicka alleges that he verbally refused any type of intrusive neck operation to correct the cancer, and that he requested to see an oncologist at the Mayo Clinic to discuss alternative treatment, such as use of the FDA-approved drug Rituxan.

Studnicka alleges that he was told he had a carpal tunnel operation scheduled at Mayo Clinic on April 11, 2001.  He was taken to Mayo Clinic, and according to Studnicka, while he was being prepared for that surgery, he was told that another procedure was going to be done.  He alleges that something was injected into his IV and he woke up over 14 hours later to find out that the neck operation that he had earlier refused had been performed on him.  He alleges that Pinheiro accidentally cut his vocal cord and his nerves and wrongfully removed muscle mass and three lymph nodes from Studnicka that were not cancerous.  Studnicka further alleges that in May 2001 Garces and the Radiation Oncology Department administered radiation therapy treatments that Studnicka repeatedly refused.  Studnicka alleges that he was overexposed to radiation, and that this overexposure resulted in many side effects.  Specifically, Studnicka alleges

that radiation caused Studnicka to lose all of his teeth and his saliva glands, and severely damaged his neck and shoulder muscles, taste buds and other glands and tissues. Studnicka further alleges that his immune system was "basically destroyed" as a result of receiving radiation and that Studnicka suffers from "constant thrust disease of mouth and throat [and] constant sinus and dry mouth infections." He alleges that he is on a liquid-only diet and that he is in constant pain. Studnicka states in his complaint that defendants refused to conduct any corrective procedures, including providing Studnicka with dental implants.

Studnicka lodged several complaints within the Bureau of Prisons (hereinafter "BOP") regarding this procedure and its effects, including a request for administrative remedy lodged with FMC, a regional administrative remedy appeal, and a central office administrative remedy appeal. After Studnicka's requests for administrative remedies were denied, Studnicka filed the present action.

## ANALYSIS

**I.     MOTION FOR SUMMARY JUDGMENT ON DELIBERATE INDIFFERENCE CLAIM**

    **A.     Standard of Review**

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.  Eighth Amendment Analysis

The Magistrate Judge concluded that although Studnicka's complaint could be interpreted as a *Bivens* action,[2] Studnicka's claim must be dismissed because he "does not direct the Court to the particular constitutional provisions that Studnicka alleges were violated by reason of Defendants' actions."  Because *pro se* pleadings must be construed liberally, the Court reads Studnicka's complaint as a *Bivens* action that alleges a claim against defendants for deliberate indifference to medical needs in violation of the Eighth Amendment.  Therefore, the first question before the Court is whether defendants are entitled to summary judgment on Studnicka's claim that defendants violated his rights under the Eighth Amendment.

---

[2] In their supporting memorandum, defendants argue that they are entitled to summary judgment for two reasons.  First, they argue that defendants are not proper parties to an action under 42 U.S.C. § 1983.  The Magistrate Judge correctly concluded that plaintiff's claim can be construed as a *Bivens* action.  *See Carlson v. Green*, 464 U.S. 14, 19 (1980) ("*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.").  Defendants are proper parties to this *Bivens* action because they engaged in federal action when they contracted with BOP to provide medical services.  *See Bellecourt v. United States*, 784 F. Supp. 623, 628 (D. Minn. 1992).  Second, defendants argue that they cannot provide the relief that plaintiff requests.  Although plaintiff's complaint lists several claims of relief that could only be provided by FMC, it is clear from plaintiff's pleadings (e.g. his civil cover sheet) that he seeks monetary relief from defendants.

Defendants argue that Studnicka cannot show that his rights were violated because his medical needs were not ignored. It is undisputed that Studnicka had cancer, defendants treated his cancer, and Studnicka is now in remission. However, contrary to defendants' assertion, it is not undisputed that plaintiff received appropriate treatment for his cancer. Indeed, Studnicka argues repeatedly that the treatment he received was inappropriate and violated his constitutional rights.

Defendants emphasize that inmates have "no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). While this is a true statement of law, it is also true that "[g]rossly incompetent or inadequate care can constitute deliberate indifference." *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990). In addition, it is possible to have an Eighth Amendment violation when a defendant administers medical treatment against an inmate's will. *Knecht v. Gillman*, 488 F.2d 1136, 1139-40 (8th Cir. 1973); *see also Gillis v. Toliver*, 2005 WL 2464991, at *3 (D. Del. Oct. 6, 2005) (finding that plaintiff's allegation that defendants administered psychotropic drugs to plaintiff against his will may be sufficient to show defendants unnecessarily and wantonly inflicted pain on plaintiff, showing deliberate indifference).

Studnicka is entitled to prove his case by establishing that defendants' course of treatment "so deviated from professional standards that it amounted to deliberate indifference in violation of his eighth amendment right to be free from cruel and unusual punishment." *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990). In *Smith*, the Eighth Circuit reversed a district court's granting of summary judgment to defendants, holding

that the district court erred as a matter of law when it ruled that proof of care by a doctor was sufficient to disprove deliberate indifference. *Id.* at 93. The record before the court contained no evidence of the appropriate standard of care, nor any indication of whether defendants' actions amounted to deliberate indifference as measured by that standard. *Id.* The Eighth Circuit was "particularly troubled by the absence of [plaintiff's] medical records from the court record," and concluded that a review of the medical records was required before a determination was made against the plaintiff. *Id.*

Here, as in *Smith*, there are no medical records in the court record and no evidence of the appropriate standard of care. The Court simply cannot grant summary judgment on a record that is so inadequate.[3] *See id.*; *Palmer v. Tracor, Inc.*, 856 F.2d 1131, 1131-34 (8th Cir. 1988) (holding summary judgment was premature because the only affidavit on record was an unsworn affidavit of defendant's attorney). Accordingly, defendants' motion for summary judgment is denied. Upon further development of the record, however, defendants may bring another motion for summary judgment.

In addition, the Court concludes that it would greatly benefit from the appointment of an independent expert witness who would examine Studnicka and his medical records,

---

[3] One might argue that summary judgment may be granted without proof of the standard of care because Studnicka bears the burden of proof on this issue at trial. As explained below, plaintiff has diligently tried to obtain his complete medical record and other documents needed to form the basis of an expert affidavit providing the standard of care. He has repeatedly asked the Court to compel defendants to provide his complete medical file and has asked the Court for a continuance so that he could obtain discovery essential to his case. As the Eighth Circuit articulated in *Smith*, the Court believes "it would be incongruous to deny the nonmoving party the ability to present the necessary proof to withstand a motion for summary judgment . . . and then grant summary judgment against the nonmoving party simply because the nonmoving party has failed to come forward with such proof." *Smith*, 919 F.2d at 93, n.4.

and provide to the Court his or her findings on the merits of Studnicka's claims. *See Smith*, 919 F.2d at 94; Fed. R. Evid. 706. Therefore, the Court orders the parties to show cause why an expert witness should not be appointed by the Court. *See id.* Although the Court may appoint an expert of its own selection, the parties may submit nominations of potential expert witnesses that may be willing and would be qualified to provide this service.[4] *See id.*

## II.  MOTION TO DISMISS MEDICAL MALPRACTICE CLAIM

### A.  Standard of Review

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to plaintiff, as the non-moving party. *See, e.g., Bhd. of Maint. of Way Employees. v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). A motion to dismiss a complaint should not be granted unless it appears beyond a doubt that plaintiff can prove no set of facts that would entitle plaintiff to relief. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

### B.  Pleading Medical Malpractice Under Minnesota Law

In the Report and Recommendation, the Magistrate Judge recommends dismissing Studnicka's medical malpractice claims for failure to comply with the procedural

---

[4] Because plaintiff is currently incarcerated and his motion to proceed in forma pauperis [Docket No. 2] indicates that he has no source of regular income, the Court is inclined to direct that defendants pay the entire cost of the expert witness.

requirements for medical malpractice claims under Minnesota law.  *See* Minn. Stat. § 145.682.  Section 145.682 requires plaintiff to serve upon defendant two affidavits in an action "alleging malpractice . . . against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case." Minn. Stat. § 145.682, subd. 2.  The first affidavit must provide an expert opinion that one of the defendants "deviated from the applicable standard of care and by that action caused injury to plaintiff."  *Id.* at subd. 3.  The second affidavit must identify the persons plaintiff will call as expert witnesses.  *Id.* at subd. 4.

Expert testimony is not required in every medical malpractice case.  *See Miller v. Raaen*, 139 N.W.2d 877, 880 (Minn. 1966) (summary of medical malpractice cases where expert testimony was not needed to establish liability).  Generally, courts do not require expert testimony where the assessment of negligence does not require "specialized medical knowledge or evaluation of medical judgment."  *Bellecourt v. United States*, 784 F. Supp. 623, 638 (D. Minn. 1992).  The Minnesota Supreme Court holds that expert testimony is not needed in medical battery cases because "the question is whether the physician, in fact, told the patient of the nature and character of the procedure and the patient consented to that procedure."  *Kohoutek v. Hafner*, 383 N.W.2d 295, 299 (Minn. 1986).

Here, Studnicka alleges that Pinheiro operated upon him without his consent, and Garces started radiation therapy treatments without his consent.  No scientific knowledge is needed to establish liability based on these allegations because the essential question is whether Studnicka actually consented to the procedures.  *See Kohoutek*, 383 N.W.2d at

299. Accordingly, the Court denies defendants' motion to dismiss Studnicka's medical malpractice claims arising from his allegations of lack of consent.

Studnicka makes several additional allegations of medical malpractice by defendants. Studnicka alleges that Pinhiero accidentally cut his vocal cords and nerves and wrongfully removed healthy muscle mass and lymph nodes. He alleges that Garces overexposed him to radiation causing him numerous painful side effects. These allegations require expert testimony to establish whether defendants deviated from the applicable standard of care. Thus, allegations based on these claims must be dismissed unless Studnicka can provide the required expert affidavits.

On August 30, 2005, defendants made a demand for Studnicka to produce the expert affidavits. *See* Minn. Stat. § 145.682, subd. 6(a). In a letter to the Court dated September 8, 2005, Studnicka explains that he could not comply with the demand at that time. He states that he has "diligently tried" to have an outside doctor examine him. Studnicka provides documentation that he requested to have a private physician examine him prior to filing the lawsuit. Prison officials rejected his request on October 29, 2004 because prison policy does not permit private physicians to examine prisoners. Studnicka asserts that when defendants provide his full set of medical records and answers to his interrogatories, he would send the materials to an outside expert witness for evaluation and production of the affidavit. Studnicka has filed multiple motions asking the Court to compel defendants to provide these materials.[5] On November 23, 2005, Studnicka asked the Court for a continuance to allow him additional time to obtain an expert affidavit

---

[5] *See* Docket No. 17, 19-20, 22.

because defendants still had not provided his complete medical file nor answered his interrogatories.

The Court may extend the time for serving the affidavits upon a showing of excusable neglect. *Stern v. Dill*, 442 N.W.2d 322, 324 (Minn. 1989). To claim excusable neglect, Minnesota courts require a plaintiff to satisfy four factors: (1) plaintiff has a reasonable case on the merits; (2) plaintiff has a reasonable excuse for his failure to meet the statutory time limits; (3) plaintiff has proceeded with due diligence after notice of statutory time limits; and (4) no substantial prejudice will result to defendant by the extension of time. *See Parker v. O'Phelan*, 414 N.W.2d 534, 537 (Minn. Ct. App. 1987).

The Magistrate Judge concluded that Studnicka failed to make a showing of excusable neglect because Studnicka did not make attempts to send his medical records to a physician and his request to BOP staff to have a private physician examine him was made one year before plaintiff filed this lawsuit. The Magistrate Judge concluded that whether or not defendants have answered Studnicka's interrogatories has no bearing on the affidavit requirement.

Compliance with the expert affidavit requirement is extremely difficult for prison inmates, especially for those that are not represented by counsel. Because prison officials would not allow an outside physician to examine him, Studnicka concluded that an expert would be forced to rely on his medical records. While defendants assert that they turned over a complete copy of his medical records, plaintiff has identified several specific items that were missing, including X-rays and computer copies of the CAT scan and MRI scan. Studnicka filed numerous motions asking the Court to compel defendants to turn over his

complete medical file, but the Magistrate Judge denied these motions on the same day that he recommended that Studnicka's complaint be dismissed for failure to comply with the affidavit requirement. Again, it is inappropriate to deny Studnicka access to the materials he needs to obtain an expert and then dismiss his claim for failing to obtain an expert. Thus, the Court finds that Studnicka has a reasonable excuse for failing to meet the deadline and acted with due diligence by requesting that a private physician be allowed to examine him and by making numerous requests for his complete set of medical records.

The Court also finds that no substantial prejudice will result to defendant by an extension of time. It has only been about a year since plaintiff filed the lawsuit, and plaintiff has not been previously granted an extension. *Cf. Bellecourt v. United States*, 784 F. Supp. 623, 640 (D. Minn. 1992) (finding prejudice when almost two and one-half years had elapsed since the suit was filed); *Maloney v. Fairview Community Hosp.*, 451 N.W.2d 237, 240 (Minn. Ct. App. 1990) (finding prejudice when two years had elapsed since the suit was filed).

Studnicka must also show he has a reasonable case on the merits to establish excusable neglect for his failure to provide the expert affidavits. As discussed above, there are no physician affidavits, nor any of Studnicka's medical records, in the court record. The Court cannot at this time determine whether Studnicka has a reasonable case on the merits. As discussed above, the Court is inclined to appoint an expert witness, and his or her findings would be used to make this determination. Accordingly, the Court

defers ruling on Studnicka's claims of medical malpractice, other than those based on his allegations of lack of consent.

### III.   APPEAL OF THE MAGISTRATE JUDGE'S ORDER DATED JANUARY 30, 2006

In an Order dated January 30, 2006, the Magistrate Judge denied Studnicka's six motions without discussion. These include three discovery motions,[6] motion for a temporary restraining order,[7] motion for continuance,[8] and motion to appoint counsel.[9] Studnicka appeals this Order.

Defendants assert that they provided Studnicka a complete copy of his medical records, but Studnicka maintains that many key documents were missing from the materials he received from defendants. Nevertheless, Studnicka now asserts that all his medical records were lost or destroyed by BOP when he was transferred to the Federal Correctional Institution in Butner, North Carolina. Defendants must promptly provide Studnicka a copy of his entire medical record, but defendants do not need to answer Studnicka's interrogatories at this time.[10] Accordingly, the Court reverses the Magistrate Judge decision on plaintiff's discovery motions, and remands for development of

---

[6] *See* Docket Nos. 19-20, 22.

[7] *See* Docket No. 39.

[8] *See* Docket No. 41.

[9] *See* Docket No. 44.

[10] If the Court appoints an expert witness, the Court will order defendants to file an additional copy of Studnicka's medical records with the Court for use by the expert witness.

discovery deadlines and ruling on plaintiff's motions consistent with this Order. Similarly, the Magistrate Judge's decision to deny Studnicka's motion for a continuance, as it relates to the discovery deadlines, is also reversed.[11]

Studnicka's motion for a temporary restraining order requests that the Court order prison personnel at FMC to provide plaintiff with adequate daily nutritional supplementation. Because Studnicka is no longer incarcerated at FMC, and prison personnel at FMC are not presently parties to this lawsuit, the Court affirms the Magistrate Judge.

Finally, Studnicka moves for the appointment of counsel. After the Court is presented with a more developed record, the Court can assess whether appointment of counsel will benefit the Court. *See Nelson v. Redfield Lithographic Printing*, 728 F.2d 1003, 1005 (8th Cir. 1984) ("The court should also determine whether the nature of the

---

[11] Studnicka's motion for a continuance also explains that he is in the process of constructing a motion for leave of the Court for amendment of his complaint. He asserts that he was unable to promptly file that motion because on December 2, 2005, he was transferred to the Federal Correction Institution in Estill, South Carolina. He alleges that after the transfer he never received some of his legal materials, including his draft motion for leave to amend complaint, documentation implicating a defendant at FMC, self-help litigation soft cover books, and most of his medical records. On February 2, 2006, he was subsequently transferred to the Federal Correctional Institution in Butner, North Carolina. Plaintiff alleges that since the transfer he has not received any of his legal materials or medical records related to this case. Because plaintiff asserts that he is without any of the records from this case, the Court grants his motion for a copy of the record.

Studnicka asserts that BOP medically cleared him and transferred him to South Carolina in retaliation for his filing of grievances and this lawsuit. Studnicka must promptly file a motion for leave to amend the complaint if he wishes to add a claim of First Amendment retaliation against specific prison officials at FMC.

litigation is such that plaintiff as well as the court will benefit from the assistance of counsel."). Accordingly, the Court defers ruling on this motion.

## ORDER

Based on the foregoing and all of the records, files, and proceedings herein, the Court **SUSTAINS in part** and **OVERRULES in part** the objections of plaintiff [Docket No. 61] and **ADOPTS in part** and **REJECTS in part** the Magistrate Judge's Report and Recommendation [Docket No. 57] and **AFFIRMS in part** and **REVERSES in part** the Magistrate Judge's Order of January 30, 2006 [Docket No. 56]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment [Docket No. 24] is **DENIED**.

2. Defendants' Motion to Dismiss [Docket No. 33] is **DENIED** as to the claims of medical malpractice based on lack of consent, but the Court **DEFERS** judgment on the claims of medical malpractice based on the other allegations.

3. Any party that objects to the Court appointing an expert witness shall within 14 days of the date of this Order show cause why an expert witness should not be appointed. Also within this timeframe, parties may submit the names of no more than three potential expert witnesses for the Court's consideration.

4. Plaintiff's Motion to Produce [Docket Nos. 19 & 20] and Motion for Order Compelling Defendants to Comply with Discovery [Docket No. 22] is **REMANDED** to the Magistrate Judge for development of discovery deadlines and ruling on plaintiff's motions consistent with this Order.

5. Plaintiff's Motion for Temporary Restraining Order [Docket No. 39] is **DENIED**.

6. Plaintiff's Motion for Continuance [Docket No. 41] is **GRANTED** in so far as it asks for development of new discovery deadlines.

7. The Court **DEFERS** ruling on Plaintiff's Motion to Appoint Counsel [Docket No. 44].

8. Plaintiff's Motion for Copy of Record [Docket No. 65] is **GRANTED**. The Clerk of Court is **DIRECTED** to provide plaintiff with a copy of the entire file in this case, together with a docket sheet and copy of this Order.

DATED: June 2, 2006
at Minneapolis, Minnesota.

s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge