UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| George Robert Studnicka, | Civil No. 05-723 (JRT/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| A. Daniel Pinheiro, Kerry D. Olsen, and Mayo Clinic Group | |
| Defendants. | |

David B. Ketroser for Plaintiff.
Heather M. McCann, William R. Stoeri, and Joseph M. Colaiano for Defendants.

___

**THIS MATTER** came before the undersigned United States Magistrate Judge on December 14, 2007, on the Plaintiff's Amended Complaint [#333]. In Defendants' Amended Motion for Summary Judgment [#383], they move for dismissal of all of the claims asserted in Plaintiff's Amended Complaint [#333]. Plaintiff has agreed to the dismissal of all claims except for the battery claim against Defendants A. Daniel Pinheiro, Kerry D. Olsen, and the Mayo Clinic Group. (See Docket Nos. 437, 445.) Therefore, Plaintiff only opposes Defendants' Motion in so far as it seeks dismissal of the battery claim relating to the April 11, 2001 radical neck dissection surgery performed on Plaintiff. (See Docket No. 438.) The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow the Court recommends that Defendants' Amended Motion for Summary Judgment [#383] be granted in part and denied in part.

# I. Findings of Fact

Plaintiff George Studnicka was an inmate at the Federal Medical Center (hereinafter "FMC") in Rochester, Minnesota, during all relevant time periods referred to in his complaint. (Am. Compl. at 2.) Plaintiff is currently an inmate at a federal facility in Estill, South Carolina. (Docket No. 50.) Defendant Mayo Clinic Facility is a medical facility located in Rochester, Minnesota. (Compl. at 3.) Defendants A. Daniel Pinheiro and Kerry D. Olsen are medical doctors at the Mayo Clinic. (Compl. at 2-3.) Defendant Mayo Clinic contracts out services to FMC. (Def's Mem., Docket No. 385 at 2.) Plaintiff filed a civil rights complaint against Defendants based on events that occurred while Plaintiff was an inmate at FMC-Rochester.

## A. Facts from the Medical Record.

On March 27, 2001, Dr. Pinheiro evaluated Plaintiff's "metastatic squamous cell carcinoma of the right neck." (McCann Decl., Docket No. 387, Ex. 1, at 100074.) Dr. Pinheiro's report from this evaluation contained the following notes under the heading "IMPRESSION/REPORT/PLAN":

> I had a lengthy discussion with Mr. Studnicka. We will proceed with a right comprehensive neck dissection. We will attempt to preserve the accessory nerve unless it is involved by tumor. We will first take biopsies of his base of tongue. If that is positive, we would plan on resecting it depending on the size felt intraoperatively most likely through a transhyphoid pharyngotomy. He understands that a temporary tracheostomy will have to be performed. There is also a small chance that we might have to do a mandibulotomoy and split his mandible for access to the tumor. He understands that he will need postoperative radiation because of the size of nodes in his neck. We will plan on scheduling him for tomorrow.

(McCann Decl., Ex. 1, at 100074-75.) Dr. Olsen also evaluated Plaintiff on March 27, 2001, and in his report made the following notes under the heading "IMPRESSION/REPORT/PLAN":

> Discussed [transhyphoid removal] with patient including goals, rationale, risks, treatment, recommendations. Due to the extensive neck disease would recommend surgery and radiation therapy. Reviewed this in detail. We will arrange a date for him.

(McCann Decl., Ex. 1, at 100076.)

The Perioperative Nursing Record, consisting of notes taken by a nurse prior to the operation, has the initials "LP" placed after the phrase "Planned procedure and Physician confirmed with patient by." (Second McCann Decl., Ex. 1, at 100202.) The record also contains a checked box to indicate that "Patient verbalizes understanding of perioperative instructions." (Second McCann Decl., Ex. 1, at 100202.) The Operative Report, consisting of information collected during the operation contains a time line of events during the operation. At 17:35 hours, the timeline states "Procedure Verified" and "Discussed with Patient/Legal Guardian Prior to Procedure." (Second McCann Decl., Ex. 1, at 100152.) The Intraoperative Nursing Record, consisting of notes taken by a nurse during the operation, states in the "Nursing Observations" section that "[Patient] a[lert] & o[riented] x3 on arrival [to] O[perating] R[oom] 22. [Patient] could state surg[ical] procedure to neck [with] purpose. . . . [No] questions. Calm & pleasant." (Second McCann Decl., Ex. 1, at 100203.) The Intraoperative Nursing Record also indicates that Plaintiff was accompanied by two "escorts" from FMC-Rochester. (Second McCann Decl., Ex. 1, at 100203.)

**B.     Facts from the Plaintiff's Affidavit.**

On April 11, 2001, a radial neck dissection was performed on the Plaintiff by Drs. Pinheiro and Olsen. (McCann Decl., Ex. 1, at 100011.) Plaintiff did not consent to the radial neck dissection. (Pl. Aff., Docket No. 311.) Prior to the surgery, Plaintiff made it known that he did not want an intrusive operation and only would consent to non-intrusive treatments, such as the prescription drug rituxan. (Pl. Aff., Docket No. 311, ¶2.) Dr. Pinheiro stated that he wanted to perform a radial neck dissection. (Pl. Aff., Docket No. 311, ¶3.) Dr. Pinheiro's description of the radial neck dissection procedure caused Plaintiff to become very upset and Plaintiff stated that under no circumstances

would he agree to such a procedure. (Pl. Aff., Docket No. 311, ¶ 4.) At no time did Plaintiff give either oral or written consent to the operation. (Pl. Aff., Docket No. 311, ¶ 14.)

## II. Standard of Review

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-27 (1986). Therefore, summary judgment is appropriate when the moving party establishes that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322-23. For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case; while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, a court should construe all evidence in favor of the non-moving party. *Id.* at 255. Thus, summary judgment is appropriate when the court has viewed the facts and the inferences drawn from those facts, in a light most favorable to the non-moving party, and found no triable issue. *See Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).

## III. Conclusions of Law

"A claim of battery lies against a physician who performs a medical procedure on a patient without his or her consent." *Kohoutek v. Hafner*, 383 N.W.2d 295, 298 (Minn. 1986) (citing *Mohr v. Williams*, 104 N.W. 12 (Minn. 1905)). A claim of battery in the medical context has two

elements: performance of a medical procedure and a lack of consent to that procedure.[1] It is undisputed that on April 11, 2001, a radial neck dissection was performed on the Plaintiff, therefore, the Court must look to whether Plaintiff consented to the April 11, 2001, radial neck dissection.

Plaintiff's affidavit clearly states that he did not consent to the radial neck dissection. Defendants cite to the recent Supreme Court decision in *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007), for the proposition that Plaintiff's own version of the facts cannot create a genuine issue of material fact when the objective record contradicts that version of the facts. In *Scott*, the plaintiff's description of a police chase of his vehicle was contradicted by a video recording of the police chase. *Id*. at 1775-76. The Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. at 1776.

In this case, the medical record does not clearly contradict the Plaintiff's affidavit so that no reasonable jury could believe the Plaintiff's version of the facts. While Defendants argue that Plaintiff's version of the facts is completely inconsistent with the medical record, the medical record does not contain any direct evidence of Plaintiff's consent to the medical operation. Both Drs. Pinhiero and Olsen's notes fail to describe Plaintiff's reaction to the procedure they are proposing.

---

[1] At the hearing, the Court requested the parties to brief whether lack of consent is an element of Plaintiff's claim for which he has the burden of proof, *see Hoofnel v. Segal*, 199 S.W.3d 147, 150 (Ky. 2006) ( battery in the medical context is an intentional tort requiring the Plaintiff to prove lack of consent), or whether consent is an affirmative defense for which the Defendants have the burden. *See Peterson v. Sorlien*, 299 N.W.2d 123, 128 (Minn. 1980), cert. denied, 450 U.S. 1031 (1981) (consent is a defense to the commission of an intentional tort). While this issue will be relevant at an eventual trial, it is not necessary for the disposition of this motion. Therefore, the Court expresses no opinion as to which party bears the burden of proving consent or lack thereof.

Their notes are completely silent as to whether Plaintiff agreed to the April 11, 2001, procedure; this silence can easily be viewed as providing support for Plaintiff's version of the facts. The Perioperative Nursing Record, Operative Report, and Intraoperative Report contain stronger indication that the Plaintiff consented to the operation, however, the Plaintiff's consent is noted by checking a box, placing initials, or reciting seemingly routine and perfunctory phrases. The information on these forms is void of any information that describes the nature and circumstances of the consent provided by Plaintiff. The information in these records would allow for an inference that Plaintiff consented to the procedure, but they fail to do more than create an inference. Here, the medical record does not clearly contradict Plaintiff's version of the facts as the video recording did in *Scott*.

Since Plaintiff's version of the facts is not blatantly contradicted by the record in this case, the Court must accept Plaintiff's version of the facts for purpose of this summary judgment motion. Plaintiff's version of the facts creates a genuine issue of material fact as to whether he consented to the April 11, 2001, radial neck dissection. Therefore, Defendant's motion for summary judgment on Plaintiff's claim for battery must be denied.

## IV.  RECOMMENDATION

Based on all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Amended Motion for Summary Judgment [#383] be **DENIED** to the extent that it seeks dismissal of the claim of battery relating to the April 11, 2001, radial neck dissection operation and be **GRANTED** to the extent that it seeks dismissal all other claims**.**

DATED: February 11, 2008              *s/ Franklin L. Noel*
                                      FRANKLIN L. NOEL
                                      United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 29, 2008,** written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.