**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| GEORGE ROBERT STUDNICKA, | Civil No. 05-723 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| A. DANIEL PINHEIRO, MAYO CLINIC FACILITY, and KERRY D. OLSEN, | |
| Defendants. | |

David B. Ketroser, **DAVID B. KETROSER, MD, JD**, P.O. Box 427, Hopkins, MN 55343-3830, for plaintiff.

William R. Stoeri and Heather M. McCann, **DORSEY & WHITNEY, LLP**, Suite 1500, 50 South Sixth Street, Minneapolis, MN 55402-1498; and Joseph M. Colaiano, **MAYO CLINIC LEGAL DEPARTMENT**, 200 First Street Southwest, Rochester, MN 55905, for defendants.

This case consists of a single medical battery claim brought by George R. Studnicka, a prison inmate, against the Mayo Clinic Facility ("Mayo Clinic") and two of its doctors, A. Daniel Pinheiro and Kerry D. Olsen. In short, Studnicka contends that the defendants performed a highly-invasive surgery on him without his consent. After the defendants were unable to produce a signed informed consent form demonstrating Studnicka's consent to the surgery, this Court denied the defendants' motion for summary judgment. Now, Studnicka brings a motion for summary judgment, arguing that the absence of a signed consent form conclusively demonstrates that the defendants committed a battery. For the reasons given below, the Court denies Studnicka's motion.

## BACKGROUND

At all times relevant to this action, Studnicka was an inmate at the Federal Medical Center in Rochester, Minnesota ("FMC-Rochester"). FMC-Rochester has a contract with the Mayo Clinic whereby the Mayo Clinic provides certain medical services to FMC-Rochester's inmates.

On February 21, 2001, Studnicka was seen by Dr. A. Daniel Pinheiro at the Mayo Clinic after Studnicka had complained of a neck mass and a prolonged sore throat. Dr. Pinheiro recommended that a biopsy be performed. On March 1, 2001, Studnicka was diagnosed with metastic squamous cell carcinoma, a form of cancer.

On March 27, 2001, Studnicka met with Dr. Pinheiro to discuss treatment options. Dr. Pinheiro's notes from this visit include the following:

> I had a lengthy discussion with Mr. Studnicka. We will proceed with a right comprehensive neck dissection. We will attempt to preserve the accessory nerve unless it is involved by tumor. We will first take biopsies of his base of tongue. If that is positive, we would plan on resecting it depending on the size felt intraoperatively most likely through a transhyoid pharyngotomy. He understands that a temporary tracheostomy will have to be performed. There is also a small chance that we might have to do a mandibulotomy and split his mandible for access to the tumor. He also understands that he will need postoperative radiation because of the size of his nodes in the neck. We will plan on scheduling that for him tomorrow.

(McCann Decl., Ex. 1 at 100074-75.) Studnicka also met that day with Dr. Kerry D. Olsen, another doctor at the Mayo Clinic. Dr. Olsen's notes from that visit include the following:

> Discussed [transhyoid removal] with patient including, goals, rationale, risks, treatment, recommendations. Due to the extensive neck disease would recommend surgery and radiation therapy. Reviewed this in detail. We will arrange a date for him.

(McCann Decl., Ex. 1 at 100076.)

On April 11, 2001, Dr. Pinheiro and Dr. Olsen performed a radial neck dissection on Studnicka. A nursing record completed the day of the surgery included a checked box next to the statement "Patient verbalizes understanding of perioperative instructions." (McCann Decl., Ex. 1 at 100202.) This record also includes a set of initials next to the statement "Planned procedure and Physician confirmed with patient." (*Id*.) In addition, a clinic timeline for the day of surgery includes entries for "Procedure Verified" and "Discussed with Patient/Legal Guardian Prior to Procedure." (McCann Decl., Ex. 1 at 100152.) Finally, an Interoperative Nursing Record, consisting of notes taken by a nurse during the operation, states that upon Studnicka's arrival to the operating room, he "could state surg procedure to neck & purpose." (McCann Decl., Ex. 1 at 100203.)

Absent from the record, however, is anything signed by Studnicka expressly indicating his consent to the operation. Studnicka contends that he never provided such consent – either in writing or orally – and that he made it known that he would not agree to an intrusive operation. In a grievance attached to his original complaint, Studnicka indicates that he thought he was at the hospital on April 11, 2001, for a carpal tunnel operation. (Docket No. 1 at 8.) The Mayo Clinic disagrees, contending that Studnicka consented to the neck surgery during discussions with both Dr. Pinheiro and Dr. Olsen, and never objected to the surgery at any time. Studnicka now moves for summary judgment, arguing that the lack of a signed consent form in his medical chart is conclusive evidence that the defendants committed a battery.

# ANALYSIS

## I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. BATTERY

"[A] claim of battery lies against a physician who performs a medical procedure on a patient without his or her consent." *Kohoutek v. Hafner*, 383 N.W.2d 295, 298 (Minn. 1986). An action for battery is also appropriate where a treatment "consists of a touching that is of a substantially different nature and character from that to which the patient consented." *Cornfeldt v. Tongen*, 262 N.W.2d 684, 699 (Minn. 1977).

Here, Studnicka alleges that he did not consent to the radial neck dissection performed by the defendants. Studnicka argues that he is entitled to summary judgment on this claim because the defendants have not produced a signed informed consent form

proving his consent. Studnicka argues that this is appropriate because (1) federal and state regulations require the presence of such a form in a patient's chart[1] and (2) these requirements are designed to protect patients from unwanted procedures. In other words, Studnicka argues that the informed consent form requirement provides the relevant standard of care for medical battery, and the failure to produce a signed informed consent form should constitute "battery per se."

The Court does not agree that Minnesota's courts would treat a failure to obtain a signed informed consent form as conclusive evidence of battery. As an initial matter, the Court notes that when Minnesota's courts have articulated the test for medical battery, they have not restricted the possible methods of consent to the signing of an informed consent form. *See, e.g.*, *Kohoutek*, 383 N.W.2d at 298. This is consistent with the approach of a number of other states who have indicated that consent to a medical procedure may be either express or implied. *See, e.g.*, *Godwin v. Danbury Eye Physicians and Surgeons, P.C.*, 757 A.2d 516, 520 (Conn. 2000) (finding oral consent to

---

[1] Specifically, Studnicka relies on Minn. Stat. § 144.55, subd. 3(a), which states that "[n]otwithstanding the provisions of section 144.56, for the purpose of hospital licensure, the commissioner of health shall use as minimum standards the hospital certification regulations promulgated pursuant to Title XVIII of the Social Security Act, United States Code, title 42, section 1395, et seq." Studnicka argues that this reference to the Social Security Act incorporates into Minnesota law 42 U.S.C. § 1395x(e)(9), which defines "hospital," in part, as "an institution which meets such other requirements as the Secretary that hospitals must meet to comply with the Social Security Act." Studnicka argues that this reference, in turn, incorporates into Minnesota law 42 C.F.R. § 482.51(b)(2), which states that "[a] properly executed informed consent form for the operation must be in the patient's chart before surgery, except in emergencies." The defendants argue that this regulation is not applicable here because it is a part of a chapter of the Code of Federal Regulations that applies only to Medicare and Medicaid patients and Studnicka was not a Medicare or Medicaid patient. However, the Court need not resolve this dispute, because even if this regulation does apply to Studnicka, the Court is not persuaded that Minnesota's courts would apply a battery per se theory in this case.

a surgical procedure sufficient to defend against a battery claim); *Grannum v. Beard*, 422 P.2d 812, 814 (Wash. 1967) ("[C]onsent to surgery may be manifested in a number of ways: as an express consent the patient may sign a formal written permission or agree orally; he may give implied authority by his conduct, as in voluntarily submitting to an operation, or by failing to object."). Indeed, Studnicka is unable to point to any case – in Minnesota or elsewhere – holding that a failure to obtain a signed informed consent form is conclusive evidence of medical battery.

In addition, at least one Minnesota court has found a genuine issue of material fact as to a patient's consent to a disputed procedure even though the doctors had failed to acquire consent to that procedure in writing. *Kohoutek v. Hafner*, 366 N.W.2d 633, 637 (Minn. Ct. App. 1985), *rev'd on other grounds*, 383 N.W.2d 295 (Minn. 1986). That decision is also inconsistent with the notion that the lack of such a form proves medical battery as a matter of law. Moreover, in the only decision this Court has uncovered that addresses the theory of battery per se directly – an unpublished decision from the Sixth Circuit – that theory was rejected. *See Cole v. Cobb*, No. 91-5557, 1992 WL 92788, at *5 (6th Cir. May 4, 1992) (noting that this was a "novel" theory with "no support in the law"). In those circumstances, the Court is not persuaded that Minnesota's courts would treat the lack of a signed informed consent form as conclusive evidence of battery, under a theory of "battery per se" or otherwise. While the absence of such a form will undoubtedly be critical evidence at trial, under Minnesota law the Mayo Clinic is entitled

to present evidence that Studnicka manifested his consent in some other manner. Accordingly, Studnicka's motion for partial summary judgment is denied.[2]

### III.   MOTION TO AMEND

Studnicka also moves to amend the pleadings to add a claim for breach of contract, alleging the Mayo Clinic breached its contract with FMC-Rochester by failing to provide services in conformity with "community standards." Studnicka argues that he is able to enforce that obligation because he is a third-party beneficiary of the contract.

If a responsive pleading has already been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). "A district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (quotation omitted). "In most cases, delay alone is insufficient justification; prejudice to the nonmovant must also be shown." *Id.* (quotation omitted). However, "[t]here is no absolute right to amend." *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 841 (8th Cir. 2004).

---

[2] The Court notes that this does not necessarily mean that there are no consequences for a hospital that fails to acquire signed informed consent forms. If the Mayo Clinic did indeed get Studnicka's consent before the neck surgery, a signed document demonstrating that consent would have been a key piece of evidence. In addition, if Studnicka is correct that the statutes and regulations he relies on required such a form, it is conceivable that the Mayo Clinic could face regulatory consequences. The Court, however, need not take any position on whether the Mayo Clinic violated its license conditions. The Court merely concludes that the lack of a signed informed consent form does not prove medical battery as a matter of law.

Here, Studnicka's initial complaint was filed on April 11, 2005, more than three years ago. That complaint does not mention the contract between the Mayo Clinic and MCF-Rochester and does not include an allegation that it was breached. (*See* Docket No 1.) Studnicka later had an opportunity to revisit the substance of his complaint, filing a motion to amend on September 28, 2006. (Docket No. 124.) The Court granted that motion. (Docket No. 304.) However, when Studnicka filed his Amended Complaint on June 19, 2007, he again failed to allege a breach of contract. (Docket No. 333.) These omissions are consistent with Studnicka's repeated assurances that "the only remaining claim" was his claim for medical battery. (*See, e.g.*, Docket No. 433 at 1.) In short, over the course of the more than three years of litigation in this case, there has been no hint that Studnicka intended to allege a breach of contract.

In addition, Studnicka's motion to amend comes well after several critical deadlines have passed. Following several extensions, discovery in this case closed on June 1, 2007. (Docket No. 221.) The deadline for filing non-dispositive motions was also set for June 1, 2007, and the deadline for filing dispositive motions was set for July 1, 2007. (*Id.*) Both parties' summary judgment motions have been fully briefed and argued, and with the filing of this order this three-year-old case is now set for trial.

Moreover, allowing Studnicka to add a claim for breach of contract would raise – for the first time in this litigation – the nature of the contractual relationship between the Mayo Clinic and FMC-Rochester. While Studnicka argues that this would not entail extensive additional discovery or substantially change this litigation, that is not entirely clear. The contractual provision Studnicka relies on requires that the Mayo Clinic meet

"community standards" in its delivery of medical services.  Studnicka contends that this is simply a matter of whether it acquired consent forms.  However, the Mayo Clinic would presumably seek to gather and present evidence providing a broader picture of what the applicable "standards" consist of, and demonstrating that it acted in compliance.  Those issues may well expand this litigation considerably.

In sum, the Court finds sufficient cause to deny Studnicka's motion to amend.  This litigation has gone on for more than three years without Studnicka alleging a breach of contract, he declined to add this allegation when given an opportunity to amend his pleadings in June 2007, and both parties' dispositive motions have been filed and resolved.  In those circumstances, the Court finds that to delay and expand this litigation would unduly prejudice the defendants, and denies Studnicka's motion to amend.  *See Bediako*, 354 F.3d at 841 (approving the denial of a leave to amend where discovery had closed and the opposing party had already moved for summary judgment).

This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Studnicka's Motion for Partial Summary Judgment for Battery [Docket No. 453] is **DENIED**.

2. Studnicka's Motion for Leave to Amend Pleadings to Allege Breach of Contract [Docket No. 473] is **DENIED**.


DATED: October 24, 2008
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge